James C. COMBS et ux., Louella Combs, Appellants,

v.

SAFEWAY STORES, INC., Appellee.

No. 18555.

United States Court of Appeals Fifth Circuit.

May 18, 1961.

Rehearing Denied June 29, 1961.

---

James E. Irion, Irion & Calhoun, El Paso, Tex., for appellants.

Wyndham K. White, Kemp, Smith, Brown, Goggin & White, El Paso, Tex., for appellee.

Before RIVES, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This is the second appearance of this case before us, judgment for the plaintiffs (appellants) in the first trial having been reversed.[1] In that decision we stated the facts thus:

"Mrs. Louella Combs was shopping in a Safeway Store in El Paso, Texas, when she stepped into a puddle of ketchup that had spilled on the floor from a broken bottle. Mr. and Mrs. Combs sued Safeway Stores, Inc., alleging that the defendant was negligent in creating a hazardous condition; in failing to remove the ketchup or in failing to isolate the hazardous condition by placing a barrier around the ketchup; in failing to warn Mrs. Combs of the presence of the ketchup; and in allowing the ketchup to remain on the floor in the immediate vicinity of an eye-catching advertising display that would divert one's attention from the ketchup puddle. Safeway Stores relies upon Mrs. Combs' alleged failure to keep a proper lookout, failure to heed an alleged warning, and on the contention that the hazard, such as it was, was open and obvious."

Upon a second trial the jury returned a verdict against the appellants and in favor of Safeway Stores, Inc., the appellee. Judgment was duly entered thereon and the Combs appealed therefrom, alleging that the verdict in favor of appellee was not supported by the evidence, and that the trial court committed error in its failure to adopt appellants' theory of negligence in answering a question propounded to it by the jury, and in its restriction of appellants' attorney in his attempt to explain why various doctors did not testify at the trial. We do not find reversible error in the actions of the trial court.

■ Taking up the points relied upon by appellants for reversal, we reach, first, appellants' claim that the verdict of the jury was "so against the great weight and preponderance of the evidence as to be grossly unjust and manifestly in error." In a former case arising in Texas we stated the law governing this Court [2] in passing upon such a contention in these words:

"Appellee's case is not a strong one, but a careful reading of his testimony and that of his mother and Dr. Goodfried convinces us that there was sufficient to take the case to the jury on this question. No two cases are exactly alike on their facts, and no good purpose would be served by detailing those involved here. It is sufficient to say that we will not disturb a jury's verdict if, as here, the evidence, viewed from the standpoint of the successful party, is sufficient to sustain the verdict, or if reasonable minds could differ as to the weight and probative force of the evidence. We are, of course, bound by the federal rule as to the effect of a jury verdict and cannot follow the argument of appellant based upon Texas decisions."

That statement of the law was backed by a number of authorities and applies, we think, to this phase of the problem before us. There was ample evidence upon which a jury could have based a finding that appellee's employee Tunnel acted as a man of ordinary prudence would have acted in removing the ketchup from the floor as soon as he was advised of its presence; that Mrs. Combs was not in view when he went, as speedily as possible, to get a mop and other appliances with which to remove the ketchup from the floor; that the spot of ketchup was in plain view, being about two and a half to three feet in diameter and readily visible to Mrs. Combs, and that Tunnel called out in a loud voice to her when he was less than ten feet from the spilled ketchup asking that she avoid stepping in it. From the facts disclosed by the record,[3]

1. Safeway Stores, Inc. v. Combs, 5 Cir., 1960, 273 F.2d 295.

2. Royal Indemnity Co. v. Curtis, 5 Cir., 1958, 256 F.2d 329, 330–331.

3. Cf. Norman Tobacco & Candy Company, Inc. v. Gillette Safety Razor Company, 5 Cir., 1959, 264 F.2d 751, 753.

we are convinced that there is no merit in this contention of appellants. In addition, appellants did not move for a directed verdict.

At the close of the evidence the court gave the jury a full and accurate charge covering the issues in the case, which the appellants accepted as adequate, stating definitely in response to a request of the court that the plaintiff had nothing to except to or suggest with respect to the charge.[4] The appellee dictated four and one-half pages of objections and exceptions to the charge, but the court overruled all of them. After the jury had deliberated for a period it sent to the court a note asking further instructions.[5] The court asked the lawyers whether they thought he should repeat the charge on the definition of negligence or, if the request of the jury was answered at all, whether he should prepare a separate definition in accordance with the instructions as to what constitutes negligence.

The appellants responded:

"The plaintiff has no objection. That is the standard charge, unavoidable accident, as used herein, is an accident that occurs without negligence on the part of either party. If there is negligence on the part of either party proximately causing the accident, then the same cannot be an unavoidable accident."

After a further discussion with the lawyers the court had the jury brought back into the courtroom and gave a supplemental charge.[6] To this supplemental charge the appellants objected on the ground that it did not sufficiently inform the jury concerning excusable instances of acts of the appellant, Mrs. Combs, that would, under other circumstances, be negligent. A reading of the charge originally given discloses that the court had, with great particularity, spelled out what would and would not constitute negligence on the part of Mrs. Combs, in view of the display advertising, which might be calculated to divert her attention. We think that the charge of the court was ample and clear and that this exception is without merit.

The appellants next claim that they were "deprived of their right to introduce evidence excusing, or explaining, their failure or refusal to call certain doctors as witnesses by the court's action in interrupting plaintiffs' counsel and suggesting that the line of questioning then being opened not be pursued further (R. 71)".[7]

4. "By the Court: Does counsel for plaintiff have any further requests or objections?
   "Mr. Irion: Plaintiff has none."

5. "To clarify the atmosphere, would the Court repeat the charge on:
   "(1) Unavoidable accident;
   "(2) Definition of what constitutes negligence as applied to either side."

6. "As used in the instructions the Court has charged that an unavoidable accident is one that occurs without the fault or negligence of either the plaintiff or the defendant, and which proximately causes the injury complained of. That is, the accident to be unavoidable must not have been caused by the negligence of either of the parties.
   "Now, negligence in law means the want of ordinary care; that is the want of such care as an ordinarily prudent person would exercise under the same or similar circumstances. Negligence can result from the failure of a person to do an act which an ordinary prudent person would do in the same or similar circumstances, or it can result from the doing of an act which an ordinary prudent person would not do in the same or similar circumstances.
   "I believe that, in short, answers your request. It may not satisfy you, but at least I believe it gives you a definition to go by."

7. The colloquy to which reference is made is as follows:
   "Mr. Irion: Now, did Dr. Stratemeyer ever tell you you were cured? A. He told me—
   "The Court: Just a moment. Do you think that is proper?
   "Mr. Irion: I think it is proper to explain the absence of Dr. Stratemeyer on the part of the plaintiff, Your Honor.
   "The Court: I don't know that you are called upon at this time to explain it.
   "Mr. Irion: I withdraw it.
   "The Court: I don't believe you ought to ask that question; it is very dangerous for you.
   "Mr. Irion: I withdraw it."

The only time appellants' counsel was restricted in his cross-examination was when the court suggested that it was not proper for him to prove by the appellant, Mrs. Combs, what her doctor had told her, stating that it was, in his opinion, dangerous for that course to be pursued; and, further, that the court did not feel that appellants were called upon at that time to explain Dr. Stratemeyer's absence.

Dr. Stratemeyer was placed on the stand by the appellee and testified fully. Appellant, Mrs. Combs, testified further that she had conferred with Doctors Ettl, Johnstone and Bason, of El Paso. The only doctor placed upon the stand was Dr. Raeder of Odessa, Texas, about three hundred miles away from El Paso, who had examined her on only one occasion. Appellants made no offer of proof to explain their failure to call any of these doctors. When the attorney for appellee mentioned such failure, appellants objected, stating: "I would like the Court to instruct the jury that they were as much available to Mr. White as they were to me."

Under the circumstances of this case we think that the argument of appellee's attorney was not improper and clearly did not constitute reversible error. As a matter of fact, the court promptly took care of the situation, when appellant objected to the argument of appellee's counsel, by a statement to the jury.[8] On the whole, we think there was no sufficient objection to the argument made, the reason given not being a sound one, that appellants made no effort to explain their failure to call the doctors they had employed, and that the whole episode was covered by the court's charge to the jury. The argument is, therefore, not valid.

It appearing that there was no reversible error committed by the court below, its judgment is

Affirmed.

8. "Members of the Jury and Gentlemen of the Bar, the case that you are to try is on the record made here in this case, and on the testimony in this room. You are not to speculate as to why oth-er persons did or did not appear, if in fact there were other persons interested in the case, who did or did not appear as witnesses."